## HARMON ROWLEY *vs.* CALEB RICE.

If a mortgagor of chattels makes a new and distinct contract with the mortgagee to deliver to him the mortgaged chattels, and also other chattels, to be held as security for payment of the debt which the mortgage was made to secure, and delivers them accordingly, and the mortgagee takes and holds possession of them under such new contract, he thereby becomes pawnee of all the chattels so delivered.

Chattels that had been mortgaged by A. to B., to secure certain notes, and also other chattels of A., were pledged by A. to B., by a new and distinct contract between them, to secure the same notes, and were afterwards attached in a suit by a third person against A.: B. thereupon stated in writing an accurate description of the notes for which the chattels were liable to him, and delivered it to the attaching officer, with a written demand on him for payment of the amount of said notes: In the writing so delivered to the officer was this declaration of B., viz: "The chattels attached by you are liable and mortgaged to me, and possession taken, for security of the *following* notes." *Held,* that the demand of B. was *not restricted* to the chattels which had been mortgaged to him, but included all the chattels on which he had a lien by pledge.

Under the Rev. Sts. *c.* 90, § 79, which require, when chattels, which are subject to pledge, are attached, that "the pawnee shall, when demanding payment of the money due to him, state in writing a just and true account of the debt or demand for which ·the property is liable to him, and deliver it to the attaching creditor or officer," if the pawnee demands more than the amount due to him, his demand will not avail him, unless it appears, 1st, that the error was the result of accident or mistake, and 2d, that the value of the property attached was less than the just and true sum for which it was pledged, so that the attaching creditor was not injuriously misled by the error, and has not thereby suffered any pecuniary loss.

TROVER for a stock of goods attached by Elihu Adams, a deputy of the defendant, sheriff of Hampden, on a writ in favor of David Clark, against William L. Tingley, on the 19th of June 1842.

At the trial in the court of common pleas, before *Merrick,* J. the plaintiff claimed title to the goods, 1st, by virtue of a mortgage made to him by said Tingley, dated January 21st 1841; and 2d, by virtue of a pledge of the same goods, made by said Tingley, on the 11th of January 1842, to secure payment of the notes mentioned in said mortgage. It appeared that the plaintiff was in possession of the goods, and of the store which contained them, when they were attached by said Adams, and that, when Adams went there to attach them, the plaintiff gave him notice of his ownership thereof, and forbade his taking them.

It was admitted by the defendant, that the notes mentioned

in the said mortgage were justly due from Tingley to the plaintiff, for money lent by him to Tingley. And it appeared that the mortgage was of all and singular the articles of personal property mentioned in the schedule thereto annexed, the same being, in part, the stock in trade in the store occupied by said Tingley, at Chicopee Falls, and also the said store, together with all goods and merchandize which said Tingley might thereafter purchase for carrying on said trade, to supply the deficiency created by any sales in the security to said Rowley, intended to be given by said mortgage. The condition of the mortgage was payment by said Tingley of the several notes aforesaid, and which are hereinafter described in the written demand, made by said Rowley on said Adams, for payment thereof.

Said Tingley was called as a witness for the plaintiff, and testified, on cross-examination, that when said mortgage was made he was indebted to various persons, and to said David Clark in a sum not exceeding $500 for goods purchased of him; that before said loans were made to him by the plaintiff, he made a full disclosure to the plaintiff of his situation; that he gave the plaintiff no security at the time of the loans, but promised to do so whenever the plaintiff should request it; that said mortgage was given to the plaintiff, at his request, and in pursuance of such promise; that when the mortgage was made, it was understood between the plaintiff and him, that he should continue his trade and business, and that the goods purchased by him, from time to time, to replenish his stock and supply the place of those sold, whether purchased by cash or on credit, should belong to the plaintiff, under the mortgage; that he continued to trade in that manner, till January 11th 1842, without objection from the plaintiff, and without accounting to him for the proceeds of any sales made, and that, during that time, the plaintiff did not inquire into his business; that before said 11th of January, he had sold the principal part of the stock originally mortgaged, and had, from time to time, purchased new goods, partly for cash, and partly on credit; that he had, during the year before said

11th of January, paid said David Clark several hundred dollars on account, but then owed him a balance of about $1300, for which the action was afterwards commenced on which said Adams made the aforesaid attachment; that his stock was then less in value, by four or five hundred dollars, than at the time of making the mortgage; that on said 11th of January the plaintiff called on him for payment of said notes, and on his telling him that he could not then pay him, the plaintiff demanded possession of said store and goods, to apply to said mortgage and notes, and that he accordingly gave the plaintiff possession thereof; that said store was personal property, having been built by him on land leased to him for that purpose; that he, at the same time, executed and delivered to the plaintiff an assignment of said lease; that an inventory was immediately taken of the property delivered to the plaintiff, on which, by the special direction of the plaintiff, was written this caption, viz: "Invoice of goods, belonging to William L. Tingley, to Harmon Rowley, taken by virtue of mortgage, January 11th 1842;" that there were also inserted in said inventory a horse, wagon and harness, purchased by the witness long after said mortgage was made; that it was then agreed between him and the plaintiff, that the plaintiff should sell all the property so delivered to him, and apply the proceeds to the payment of his said notes; and that if any balance should remain, after payment of the notes in full, the plaintiff should account to him for it.

It appeared that the plaintiff, on the day after the attachment, (viz. January 20th 1842,) made a written demand on said Adams, the attaching officer, as follows: "I give you notice that the goods attached by you, in the shop recently occupied by William L. Tingley, at Chicopee Falls, on the suit of David Clark of Hartford, Connecticut, *vs.* Tingley, are liable and mortgaged to me, and possession taken for the security of the following notes, to wit, one of $400, dated June 20th 1840, payable on demand, with interest; one of $300, dated July 10th 1840, payable on demand, with interest; one of $200, dated September 16th 1840, payable on

demand, with interest; one of $150, dated October 2d 1840, payable on demand, with interest ; one of $225, dated November 20th 1840, payable on demand, with interest; one of $275, dated December 20th 1840, payable on demand, with interest ; in the whole, with interest, amounting to the sum of $1676·60, for which said sum I hereby demand payment of you. Harmon Rowley." It also appeared that the plaintiff, at the time of making said demand, had in his hands $52, which he had received from the sale of part of the goods, after the delivery to him on the said 11th of January.

It was in evidence, that when said demand was made on Adams, he replied that, if the plaintiff could designate the articles contained in the mortgage, he would give them up, and that the plaintiff declined to do this, saying that he claimed the whole.

The defendant's counsel contended, 1st, that the mortgage was fraudulent upon its face, and therefore void ; 2d, that if the fraud did not sufficiently appear upon the face of the mortgage, the transaction, as stated by Tingley, was fraudulent, and ought to be so determined by the court; 3d, that the transaction of January 11th did not constitute and amount to a pledge ; 4th, that if that transaction could be considered as a pledge, the plaintiff's said demand on Adams concluded him from claiming the property of the officer, except as mortgagee ; 5th, that if the mortgage was not fraudulent, the plaintiff could not recover, in this action, for that part of the goods originally mortgaged ; they being mingled with the goods subsequently purchased, so that the officer could not distinguish them, and the plaintiff, when request-ed, having declined to do so : 6th, that the plaintiff's demand was insufficient to enable him to maintain this action, because it did not truly state the amount due to him.

But the court instructed the jury, (among other things not necessary to be here stated,) that whether the transaction of January 11th 1842 was a pledge of the goods, was a question of fact to be determined by them ; and that the plaintiff was entitled to recover, in this action, for the whole of the goods

taken by Adams, if they were satisfied, upon all the evidence submitted to them, that on said 11th of January, there was a new, separate and distinct contract between the plaintiff and Tingley, independent of the mortgage, that Tingley should then deliver the goods to the plaintiff, to be held by him as security for the payment of said notes, and that the goods were then delivered by said Tingley to the plaintiff, in fulfilment of, and as a part of, said contract, and were, from that time until they were attached, in his possession, under and by virtue of such new, separate, and independent contract; and that, if there was such a contract, and the plaintiff then took possession of the goods, and held them under it, the plaintiff was not concluded, by his said demand, from claiming said property of Adams, except as mortgagee.

The court further instructed the jury, that the said written demand on Adams — although the amount therein specified to be due to the plaintiff, being the amount of said notes and the interest thereon, was more than was actually due to him, by the said sum of $52 received by him for goods sold after he took possession as aforesaid — was sufficient to enable him to maintain this action, if the jury were satisfied that he intended truly to state therein the sums justly due to himself, and omitted to make the deduction of said sum of $52 by accident or mistake, and if also neither said Adams nor said Clark had paid, or offered to pay, the plaintiff the whole or any part of the sum demanded.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions to the said instructions.

*R. A. Chapman & Ashmun,* for the defendant.

*J. Willard & J. W. Newcomb,* for the plaintiff.

Dewey, J. We have not thought it necessary to consider very particularly the objections taken to the validity of the mortgage given to the plaintiff on the 21st of January 1841, because he has an independent source of title, upon which he may rely, in the transfer and delivery of the property by way of pledge, on the 11th of January 1842, which was the foundation of the verdict he obtained, and in reference to which

the instructions of the presiding judge are deemed correct. Upon the right of property, under these instructions, and the finding of the jury, the plaintiff may well maintain his claim.

A distinct and independent question, however, is made as to the right to maintain this action, arising from an alleged want of a proper demand of the property, and a statement of a just and true account of the debt for which the plaintiff had a lien upon it.

1st. It is said that the demand was restricted to the property held by the plaintiff under a mortgage, and cannot apply to the property subsequently transferred by the pledge of January 11th 1842. 2d. That the demand was not accompanied by a true and just account of the debt of the plaintiff, for which the property was pledged.

As to the *first*, if it had been, as seemed to be assumed in the argument, a demand restricted exclusively to property held under a mortgage, it would have been a fatal objection to the demand. But, upon carefully scrutinizing the writing delivered to Adams as a demand, we think its language is not thus restricted to property held by the mortgage of January 1841, but may be reasonably held to include any lien he might have by way of pledge.

The *second* point presents a question of greater difficulty, upon which we believe there has been no previous decision. By the Rev. Sts. *c.* 90, § 78, personal property that is subject to a lien may be attached, the attaching creditor paying or tendering, to the person having the lien, the amount for which it is liable to him. Section 79 requires that "the mortgagee, pawnee or holder shall, when demanding payment of the money due to him, state in writing *a just and true account* of the debt or demand for which the property is liable to him, and deliver it to the attaching creditor or officer." The account stated by the plaintiff was erroneous, inasmuch as it stated an excess in the debt, beyond the true amount, in the sum of fifty two dollars. This error, it is contended, is fatal to the plaintiff's action. The presiding judge ruled, that if the jury were satisfied that the plaintiff intended truly to

Rowley *v.* Rice.

state the sum justly due, and omitted to deduct the sum of fifty two dollars by mistake, and if neither the creditor nor officer offered to pay the whole or any part of the sum demanded, the error in the amount stated would not invalidate the demand.

In the view we have taken of the statute on this subject, we apprehend that this ruling was somewhat too favorable to the plaintiff. It might do injustice to the attaching creditor, under circumstances where the other party should be held to bear the loss; the injury arising through the default of the creditor holding the pledge or other lien. The ruling of the judge, that the error should be one arising from accident or mistake, in order to excuse the defect, is well stated; and this we think should be shown. But the mere proof of honest intention to state a true account is not enough. The creditor must go further, and show that no damage has accrued to the other party by reason of the mistake. If he can show that in no possible event the attaching creditor could have been damnified by the error, his lien shall not be thereby defeated; as, for instance, if he can show that the value of the goods amounted to a sum altogether less than the actual amount of the lien, so that, if a just and true account had been stated, the attaching creditor could have had no interest in any surplus, and would not have discharged the lien by payment, or that, if he had done so, it would have been prejudicial to his interest. We think the rule may be stated thus: To avoid the objection, that the statement of the debt is not true and just, by reason of overstating the sum due, it must appear, 1st, that the error resulted from accident or mistake; 2d, that the value of the property attached was less than the just and true sum for which it was pledged, and therefore the attaching creditor was not injuriously misled by the error, and has not suffered any pecuniary loss thereby. To this extent, we think the pledgee, who has innocently rendered an incorrect account, may be relieved; but not further. The instructions being erroneous in this particular, the verdict must be set aside and a *New trial granted.*